UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MERCHANTS NATIONAL BONDING,
INC.,

        Plaintiff,

v.                                   Case No.:

DAVID H. HOFFMANN, JERRILYN M.
HOFFMANN, TIER ELECTRIC OF
CENTRAL FLORIDA, INC., and
HOFFMANN TIER ELECTRIC, LLC,

        Defendants.

_____/

## COMPLAINT

Plaintiff, Merchants National Bonding, Inc. ("Merchants"), sues Defendants,

David H. Hoffmann, Jerrilyn M. Hoffmann, Tier Electric of Central Florida, Inc.,

and Hoffmann Tier Electric, LLC (collectively, the "Indemnitors").

## PARTIES, JURISDICTION, AND VENUE

1.    This Court has jurisdiction over the parties pursuant to 28 U.S.C. §

1332(a) because Plaintiff and Indemnitors are citizens of diverse states.

2.    Merchants is an Iowa corporation with its principal place of business

in West Des Moines, Iowa, making it a citizen of Iowa pursuant to 28 U.S.C.

1332(c)(1). Merchants is authorized to conduct business in Florida.

3.     David H. Hoffmann is a resident of Florida with the last known address of his domicile being 3565 Ft. Charles Drive, Naples, Collier County, Florida. Thus, David Hoffmann is a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

4.     Jerrilyn M. Hoffmann is a resident of Florida with the last known address of her domicile being 3565 Ft. Charles Drive, Naples, Collier County, Florida. Thus, Jerrilyn Hoffmann is a citizen of Florida in accordance with 28 U.S.C. § 1332(a).

5.     Tier Electric of Central Florida, Inc. ("Tier Electric"), is a Florida corporation with a principal place of business in Wilmette, Illinois, according to Tier Electric's 2023 Florida Profit Corporation Annual Report filed with Florida's Secretary of State, a copy of which is attached as **Exhibit A**.  Accordingly, Tier Electric is a citizen of both Florida and Illinois pursuant to 28 U.S.C. 1332(c)(1). Tier Electric is authorized to conduct business in Florida.

6.     Hoffmann Tier Electric, LLC ("Hoffmann Tier"), is a Florida limited liability company with its principal place of business in Winnetka, Illinois, according to Hoffmann Tier's 2024 Florida Limited Liability Company Annual Report filed with Florida's Secretary of State, a copy of which is attached as **Exhibit B**.  Gregory Hoffmann is identified in Hoffmann Tier's 2024 Annual Report as its sole manager, whose last known address is 825 Green Bay Road, Suite 100,

Wilmette, Illinois 60091, making him a citizen of Illinois in accordance with 28 U.S.C. § 1332(a). Accordingly, Hoffmann Tier is a citizen of both Florida and Illinois pursuant to 28 U.S.C. 1332(c)(1).

7.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because complete diversity exists between Merchants and the Indemnitors as citizens of different states.

8.    Venue is appropriate in this Court because one or more of the Indemnitors reside in and/or a substantial portion of the events giving rise to the claims occurred in Collier County, which is within the boundaries of the Middle District of Florida and within the province of the Fort Myers Division of this Court.

## GENERAL ALLEGATIONS

9.    As part of its business, Merchants issues construction bonds and stands as surety for selected contractors.

10.    In connection with its work, Tier Electric from time to time required surety construction bonds for construction projects on which it desired to work.

### *The GAI*

11.    To confirm and secure their multiple obligations to Merchants in exchange for Merchants' issuance of bonds for Tier Electric, the Indemnitors entered into an indemnity agreement with Merchants.

12.    Specifically, on or about September 8, 2021, the Indemnitors each executed a General Application and Agreement of Indemnity Contractors Form ("GAI") in favor of Merchants, its affiliates, subsidiaries, subsidiaries of subsidiaries, successors, and/or assigns.[1] A true and correct copy of the GAI is attached and incorporated into this Complaint as **Exhibit C**.

13.    The GAI is just and reasonable and supported by adequate consideration.

14.    According to the GAI, the Indemnitors agreed, among other things, to jointly and severally and:

> unconditionally indemnify and keep indemnified [Merchants] against any and all liability, loss and expense of whatsoever kind or nature, including, but not limited to, court costs, attorneys' fees, and interest, which [Merchants] may sustain or incur (1) by reason of having executed or procured execution of any Bond or Bonds, (2) by reason of the failure of the Undersigned to perform or comply with this Agreement, or (3) to enforce any of the covenants and conditions of this Agreement.

Ex. A at ¶ 2.

15.    The Indemnitors further agreed, upon demand, to "furnish money to the Contractor or to [Merchants] for the prompt payment of labor and materials

---

[1] The GAI contains several scrivener's errors with respect to the spelling of the indemnitors' names: specifically, as to both the individual and corporate indemnitors, spelling the "Hoffmann" surname with one "n" rather than with two.

used in performance of contracts guaranteed by a Bond when and as requested to do so by [Merchants]." *Id.*

16.    The Indemnitors also agreed that Merchants "shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit, or judgment shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and [Merchants'] determination shall be final, conclusive and binding upon the Undersigned." *Id.*

17.    Similarly, the Indemnitors agreed that Merchants has the right, "at its option and in its sole discretion, to take possession of the work under any and all contracts guaranteed by any such Bond whenever, in its sole opinion, such action is desirable or necessary, and at the expense of the Undersigned to complete or to contract for the completion of the same, or to consent to the reletting or completion thereof by the obligee in any such Bond, or to take such other steps as in the discretion of [Merchants] may be advisable or necessary to secure its release or to secure itself from loss thereunder." In that event, "[a]ll damage, loss or expense of any nature which [Merchants] may incur . . . shall be borne by the Undersigned." *Id.*

18.    If, on the other hand, any of the Indemnitors wished to request that Merchants "litigate any claim or demand, defend any suit, or appeal from any judgment," the GAI required them to "deposit with [Merchants], at the time of any

request, cash or other collateral satisfactory to [Merchants] in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against [Merchants] together with interest, costs and attorneys' fees, providing that, in the sole opinion of [Merchants], there is a legitimate basis for disputing the validity of the claim, demand, suit or judgment." *Id.*

19.     The Indemnitors agreed that "[v]ouchers, affidavits or other evidence of payment by [Merchants] of any loss, cost or expense shall be prima facie evidence of their propriety and the liability of the Undersigned to [Merchants] for such loss, cost or expense." *Id.* Further, the Indemnitors agreed that, "[i]n the event of any payment by [Merchants] [and] . . . in any accounting between [Merchants] and the Undersigned, [Merchants] shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed." *Id.*

20.     The Indemnitors also agreed, "[u]ntil such time as the potential liability of [Merchants] under any Bond or Bonds is terminated," to "promptly furnish to [Merchants] such information as the Company may request, and [Merchants] shall have the right to examine and copy the books, records and

accounts of the Undersigned and inspect the work at any project (whether such project is covered by any Bond or unbonded)." *Id.* at ¶ 13.

21.    Under the GAI, the Indemnitors also expressly agreed and declared that all payments received or to be received from any bonded contracts are trust funds, "whether in the possession of the Contractor or another, for the benefit of [Merchants], and for the payment of obligations incurred on the contracts for labor, materials or services, and for no other purpose, until [Merchants] is completely exonerated from liability on the Bond or Bonds which cover the contracts." *Id.* at ¶ 4.

22.    The terms of the GAI are sufficiently clear, definite, and certain to allow this Court to enforce them.

### The Bonds and the Project

23.    At the request of one or more of the Indemnitors, Merchants issued a Subcontract Payment Bond (the "Payment Bond") and Subcontract Performance Bond (the "Performance Bond") (collectively, the "Bonds"), both naming Tier Electric as principal, and Suffolk Construction Company, Inc. ("Suffolk"), as obligee, on a project referred to as VI Bentley Village – Addition & Renovation, Job #221092, located in Naples, Florida (the "Project").

24.    The penal sum of each of the Bonds is $4,742,000.00.

### Tier Electric's Default and Financial Stresses

25.    On or about December 19, 2022, Suffolk sent a Notice of Default and Obligee's Claim Against the Performance Bond to Tier Electric and Merchants. Suffolk claimed the letter was in furtherance of its "prior notices to cure, untimely performance of work, non-compliant and/or deficient work by [Tier Electric], including without limitation Suffolk's Notice to Cure dated December 16, 2022 . . . ." Suffolk asserted that Tier Electric had "refused and/or failed to cure its defaults," and, as of that date, "abandoned the Project and informed Suffolk that it will commence its demobilization."

26.    As a result, Suffolk demanded that Merchants "promptly remedy the material default on behalf of its principal Tier Electric pursuant to the Bond."

27.    Thereafter, Suffolk, Tier Electric, and Merchants entered a Performance Bond Release and Assignment dated June 13, 2023 (the "Release and Assignment"). Pursuant to the Release and Assignment, Merchants paid Suffolk $1,834,418.00 in exchange for Suffolk partially releasing and discharging the Performance Bond, leaving a reduced penal sum of $500,000.00.

28.    Suffolk, Tier Electric, and Merchants also agreed to de-scope Tier Electric's work on the Project, leaving it to complete only certain remaining work identified as Phase 1 Items, with Suffolk completing all other scopes of work on the Project.

29.     The Release and Assignment additionally required Tier Electric to complete the Phase 1 Items within 90 days, and provided for Delay Damages of $5,000.00 per day (subject to the reduced penal sum discussed above) as Suffolk's sole remedy for Tier Electric's delay in doing so.

30.     On or about February 27, 2024, Suffolk demanded that Merchants pay it $500,000.00 in liquidated delay damages arising from Tier Electric's failure to complete the Phase 1 Items in a timely manner in accordance with the Release and Assignment.

31.     Merchants ultimately paid Suffolk the $500,000.00 it demanded in exchange for a full release, discharge, and cancellation of the Performance Bond, which the parties' memorialized in a Supplemental Performance Bond Release and Assignment.

32.     Aside from Merchants' Performance Bond losses, Tier Electric was unable to pay its subcontractors, suppliers, vendors, or even its own payroll on a timely basis. As a result, Merchants agreed to and did provide financing to pay such subcontractors, suppliers, and vendors, and for Tier Electric's payroll, and incurred significant losses in excess of $2,500,000.00 doing so.

33.     Additionally, as a result of Tier Electric's failure and/or refusal to fulfill its payment and performance obligations on the Project, Merchants was

forced to hire consultants and attorneys to respond to, investigate, defend against, and, at times, resolve the various claims.

*Merchants' Demand for Reimbursement and Indemnity*

34.    On or about July 24, 2024, Merchants demanded, among other things, that the Indemnitors comply with their joint and several obligations to indemnify and save harmless Merchants under the GAI, and pay Merchants $4,861,352.12 for its losses incurred as of that date standing as surety for Tier Electric, and do so on or before August 7, 2024. A true and correct copy of Merchants' July 24 letter is attached and incorporated into this Complaint as **Exhibit D.**

35.    To date, the Indemnitors have failed and/or refused to comply with Merchants' demand.

36.    Before filing this action, Merchants demanded, orally and/or in writing, that the Indemnitors indemnify it for all amounts it incurred standing as surety for Tier Electric.

37.    Despite demand, the Indemnitors have failed and/or refused to comply with Merchants' request for indemnification for the losses Merchants suffered as a result of issuing the Bonds and standing as surety for Tier Electric.

38.    Merchants retained the undersigned attorneys to represent it in this action and is obligated to pay these attorneys a reasonable fee for their services rendered.

39.     Merchants performed all of the terms, covenants, and conditions required on its part to be performed under the terms of the GAI or has been excused from doing so.

40.     All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
## BREACH OF CONTRACT

41.     Merchants realleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

42.     This is an action for damages against the Indemnitors due to their breach of the GAI.

43.     On or about September 8, 2021, Merchants and the Indemnitors entered into the GAI.

44.     The Indemnitors are in default of, and have materially breached, the GAI by:

    a.  failing and/or refusing to pay and/or resolve Suffolk's claims;

    b.  failing and/or refusing to timely and/or fully pay Tier Electric's subcontractors, suppliers, and/or vendors on the Project;

    c.  failing and/or refusing to indemnify and keep Merchants indemnified from any and all liability for losses, costs, fees, and/or

expenses of whatsoever kind or nature that Merchants incurred, or may incur, as a result of issuing the Bonds; and/or

    d.  breaching other provisions of the GAI.

45.    Merchants fully performed all of its obligations under the GAI, or has been discharged or excused from such performance as a result of the Indemnitors' breaches and defaults of the GAI.

46.    As a result of the Indemnitors' breaches and defaults of the GAI, and standing as surety for Tier Electric, Merchants has suffered losses and damages, including, but not limited to, payments to Suffolk to resolve Suffolk's claims against the Bonds, payments Merchants made to Tier Electric's subcontractors, suppliers, vendors, Tier Electric's payroll, attorneys' and consultants' fees, costs, and other expenses.

47.    Merchants is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the GAI.

WHEREFORE, Merchants demands judgment in its favor and against the Indemnitors, jointly and severally, for damages, prejudgment interest, attorneys' fees, costs, and expenses, and for such further or other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Robert C. Graham, Jr.
BRETT D. DIVERS, ESQ.

Florida Bar No. 973246
bdivers@pdtlegal.com
ROBERT C. GRAHAM, JR., ESQ.
Florida Bar No. 105951
rgraham@pdtlegal.com
PASKERT DIVERS THOMPSON
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Counsel for Merchants National Bonding, Inc.*