

**MERCHANTS BONDING COMPANY (MUTUAL) • MERCHANTS NATIONAL BONDING, INC.**
P.O. BOX 14498, DES MOINES, IOWA 50306-3498 • PHONE (800) 678-8171 • FAX (515) 243-3854

# GENERAL APPLICATION AND AGREEMENT OF INDEMNITY
## CONTRACTORS FORM

THIS AGREEMENT, made and entered into this __8th__ day of __September__, __2021__, with and in favor of the MERCHANTS BONDING COMPANY (MUTUAL), and MERCHANTS NATIONAL BONDING, INC., both being corporations of Iowa, and their affiliates, subsidiaries, subsidiaries of subsidiaries, successors, and assigns (hereinafter collectively called the Company), and executed by

Tier Electric of Central Florida, Inc.

(hereinafter referred to as the Contractor) and

David Hoffman, Jerrilyn Hoffman, and Hoffman Tier Electric LLC

(hereinafter referred to as Indemnitors).

### WITNESSETH:

WHEREAS, the Contractor and/or Indemnitors, in the transaction of business and in the performance of contracts and in the fulfillment of obligations generally, may desire or be required from time to time to give certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds'"), and

WHEREAS, upon the express condition that this Agreement be executed, the Company has executed, or procured the execution of, and may from time to time execute or procure the execution of such Bonds.

NOW, THEREFORE, in consideration of the execution of any such Bond or Bonds and other valuable considerations, and as an inducement to such execution, Contractor and Indemnitors (hereinafter collectively referred to as the Undersigned, jointly and severally), agree and bind themselves, their heirs, executors, administrators, trusts, successors, assigns, wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired as follows:

FIRST: The Undersigned will pay to the Company upon the execution of each such Bond the initial premium computed in accordance with the rates currently charged by the Company at the time such Bond is executed and the Undersigned will also pay all renewals or additional premiums computed at such rates until proof is furnished satisfactory to the Company of its discharge from all liability under such Bond. Should the initial premium be computed on a rate per $1,000 contract price and should the final contract price be more or less than the price upon which such premium charge was based, the Undersigned will pay to the Company an additional premium, or be entitled to receive from the Company a return premium, as the case may be, computed upon such difference in the contract price, subject to the applicable Waiver of Premium Rule.

DocuSign Envelope ID: B006A00A-D536-4FF2-8D06-65B9909344D3
Case 2:24-cv-01034-JES-NPM    Document 1-3    Filed 11/08/24    Page 2 of 13 PageID 17

Tier Electric of Central Florida, Inc.

SECOND: The Undersigned shall unconditionally indemnify and keep indemnified the Company against any and all liability, loss and expense of whatsoever kind or nature, including, but not limited to, court costs, attorneys' fees, and interest, which the Company may sustain or incur (1) by reason of having executed or procured execution of any Bond or Bonds, (2) by reason of the failure of the Undersigned to perform or comply with this Agreement, or (3) to enforce any of the covenants and conditions of this Agreement. The Undersigned agree to furnish money to the Contractor or to the Company as needed for the prompt payment of labor and materials used in performance of contracts guaranteed by a Bond when and as requested to do so by the Company. The Company shall have the exclusive right for itself and for the Undersigned to decide and determine whether any claim, demand, suit, or judgment shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and the Company's determination shall be final, conclusive and binding upon the Undersigned. Vouchers, affidavits or other evidence of payment by the Company of any loss, cost or expense shall be prima facie evidence of their propriety and the liability of the Undersigned to the Company for such loss, cost or expense. In the event of any payment by the Company, the Undersigned agree that in any accounting between the Company and the Undersigned, the Company shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. If the Undersigned request that the Company litigate any claim or demand, defend any suit, or appeal from any judgment, they shall deposit with the Company, at the time of any request, cash or other collateral satisfactory to the Company in kind and amount to be used in paying any judgment or judgments rendered, or which might be rendered, against the Company together with interest, costs and attorneys' fees, providing that, in the sole opinion of the Company, there is a legitimate basis for disputing the validity of the claim, demand, suit or judgment.

THIRD: The Undersigned hereby expressly waive notice by the Company and agree and understand that the Company in its sole discretion is authorized and empowered to assent, or refuse to assent, to any change or modification whatsoever in the Bonds and/or contracts guaranteed by a Bond and the contracts' accompanying general conditions, plans or specifications. These changes and modifications may include, but are not limited to, any change in the time for completion and to payments or advances being made before the same may be due, and to assent, or refuse to assent, to take any assignments, and to execute, or consent to the execution of, any continuation, extension or renewal of the Bonds and to execute any substitutes, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, all without notice to or knowledge of the Undersigned. It is expressly understood and agreed that the Undersigned shall remain bound under the terms of this Agreement, even though any such assent or refusal to assent by the Company does or might substantially increase the liability of the Undersigned, and that the Undersigned shall be liable to the Company pursuant to this Agreement on account of any such altered, changed, modified, amended, limited, renewed, substituted, or extended Bonds. The Undersigned hereby waive notice of the execution of any Bond and of any act, fact or information concerning or affecting the rights or liabilities of the Company or the rights or liabilities of the Undersigned.

FOURTH: The Undersigned agree and expressly declare that all payments received or to be received from any contracts bonded by the Company are trust funds, whether in possession of the Contractor or another, for the benefit of the Company, and for the payment of obligations incurred on the contracts for labor, materials or services, and for no other purpose, until the Company is completely exonerated from liability on the Bond or Bonds which cover the contracts. The Undersigned, as trustee, shall, upon demand of the Company and in implementation of the trust hereby created, establish an account with a bank designated by the Company, which account will be designated as a trust account for the contracts bonded by the Company. Withdrawals from this account will be made only by the Company or its designated representatives, if so desired by the Company. Said trust or trusts shall terminate on the payment by the Undersigned of all of the contractual obligations for the payment of which the trust or trusts are created, or upon the expiration of 20 years from the date of this Agreement, whichever occurs first.

FIFTH: The Company shall have the right, at its option and in its sole discretion, to take possession of the work under any and all contracts guaranteed by any such Bond whenever, in its sole opinion, such action is desirable or necessary, and at the expense of the Undersigned to complete or to contract for the completion of the same, or to consent to the reletting or completion thereof by the obligee in any such Bond, or to take such other steps as in the discretion of the Company may be advisable or necessary to secure its release or to secure itself from loss thereunder. All damage, loss or expense of any nature which the Company may incur in this connection shall be borne by the Undersigned.

SIXTH: The Undersigned does hereby assign, transfer and convey to the Company, as of the date of execution of any Bond, for the Company's protection and use and as collateral security for the full performance of the covenants and agreements herein contained and for the payment of any indebtedness or liability of the Undersigned to the Company, whether heretofore or hereafter incurred, the following:

(a) All rights, titles and interests of the Undersigned in and to all machinery, equipment, plant, tools and materials now owned or hereafter acquired by the Undersigned, whether the same are, or may thereafter be, about or upon the site of the work to be performed under the contract referred to in and guaranteed by any Bond issued under the terms of this Agreement, or located elsewhere, including materials purchased for or chargeable to said contract which may be in process of construction or in storage elsewhere or in transportation to said site;

(b) All rights of the Undersigned in, or arising in any manner out of, said contract or any extensions, modifications, changes, alterations, or additions thereto;

(c) All rights, actions, causes of action, claims and demands which the Undersigned may have or acquire against any subcontractor or any person, firm or corporation furnishing or agreeing to furnish or supply labor, materials, supplies, machinery, tools or other equipment in connection with or on account of said contract, and against any surety or insurer of any such materialman, subcontractor, laborer or other person, firm or corporation, including any insurer of the Undersigned;

(d) All monies due or to become due to the Undersigned arising out of or in any way related to any bonded contract or to any other contracts, including, but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work, and claims and the proceeds thereof. The Undersigned hereby authorize the Company to prosecute, settle, compromise, waive or release any said assigned rights in the name of the Company or in that of the Undersigned and to endorse the name of the payee, and to collect any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights.

(e) All other personal property now owned or hereafter acquired by the Undersigned, including but not limited to accounts receiveable, notes receivable, choses in action and proceeds to collateral.

(f) All rights, titles and interests of the Undersigned in and to all limited liability companies, general partnerships, limited partnerships, limited liability partnerships and joint ventures.

SEVENTH: The Undersigned hereby irrevocably nominate and appoint any officer of the Company as the true and lawful attorney-in-fact of the Undersigned, with full right and authority to execute on behalf of, and sign the name of, the Undersigned to any voucher, release, satisfaction, check, bill of sale of all or any property assigned by this Agreement to the Company, or any other document necessary or desired to carry into effect the provisions and purposes of this Agreement. The Undersigned hereby ratify and confirm all that such attorney-in-fact or the Company may do for the purposes set forth in this Agreement. The Undersigned specifically agree to protect, indemnify and save and hold harmless the Company and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise due to the exercise of the assignments contained in this Agreement and the powers herein granted.  Further, the Undersigned specifically waive any claim which the Undersigned have or might hereafter have against the Company or such attorney-in-fact on account of any act performed using the powers herein granted.

EIGHTH: The Company, at its sole election and discretion, is authorized and empowered, but not obligated, to advance or loan to the Contractor any money which the Company may see fit to advance to the Contractor in any form whatsoever, and to guarantee repayment of any loans made by others, but in no event, shall the Company be obligated to use either its own funds, or collateral provided by the Contractor (or a third party) to fund the Contractor (or any designee or assignee of the Contractor) to complete any contract. All money so loaned, advanced or guaranteed, as well as all costs, attorneys' fees and expenses incurred by the Company in connection with such loans, advances or guarantees, unless repaid with legal interest by the Contractor, shall be a loss by the Company for which the Undersigned shall be responsible. The Undersigned hereby waive all notice of such loan, advance or guarantee, or of any default or any other act or acts giving rise to any claim under any such Bond, and waive notice of any and all liability of the Company under any such Bond or any and all liability on the part of the Undersigned to the effect and end that the Undersigned shall be and continue to be liable to the Company hereunder in spite of any notice of any kind to which the Undersigned might have been entitled and in  spite of any defenses which the Undersigned might have been entitled to make.

NINTH: In the event the Company procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear. In the event the Undersigned shall borrow any money to finance the bonded contract or shall undertake to make any assignment of the bonded contract or any monies due or to become due thereunder, then it is expressly agreed that any such assignment shall be subordinate and inferior to the rights of the Company hereunder, or at law or in equity. Any indebtedness of Contractor now or hereafter held by any Indemnitor is hereby subordinated to any indebtedness of Contractor to Company and such indebtedness of Contractor to Indemnitor shall, if Company so requests, be collected and received by Indemnitor as trustee for Company and be paid over to Company on account of any indebtedness of Contractor to Company, but without reducing or limiting in any manner any liability of Indemnitor under this Agreement.

TENTH: The Undersigned hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process secured or requested by the Company under the law of the United States or of any state or province or of any other government. The Undersigned hereby waive trial by jury in any action or proceeding pertaining to this Agreement. This waiver is knowingly, willingly and voluntarily made by the Undersigned, and the Undersigned represent and warrant that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

ELEVENTH: Until such time as the Company is no longer liable on Bonds covered by this Agreement, the Undersigned agree to meet with a representative of the Company, upon demand of the Company, at the earliest possible time after the demand when, in the sole judgment of the Company, such a meeting is necessary in order to further the intent of this Agreement. At the request of the Company, the Undersigned will be represented by legal counsel at the meeting and will furnish to the Company the name, address and telephone number of such legal counsel at least 24 hours prior to the meeting.

TWELFTH: The Company shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship, and nothing herein contained shall be considered or construed to waive, abridge or diminish any right or remedy which the Company might have if this Agreement were not executed. Upon request of the Company, the Undersigned will procure the discharge of the Company from any Bond and all liability by reason thereof. Separate suits may be brought hereunder against any or all of the Undersigned as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action.

THIRTEENTH: Until such time as the potential liability of the Company under any Bond or Bonds is terminated, the Undersigned will promptly furnish to the Company such information as the Company may request, and the Company shall have the right to examine and copy the books, records and accounts of the Undersigned and inspect the work at any project (whether such project is covered by any Bond or unbonded). Any bank, depository, creditor, obligee of a bond, subcontractor, material supplier or other person, firm, or corporation possessing records or having information concerning the financial affairs and operations of the Undersigned is hereby authorized to furnish to the Company and its representatives or consultants any such records or information requested by the Company. The Undersigned will execute, as requested by the Company, any additional documents to cause the release of records and information authorized by this paragraph. For the purpose of procuring co-suretyship or reinsurance, or of advising persons or companies of any circumstance pertaining to the Bonds, the Company may furnish to other persons or companies copies of any and all records, agreements, financial statements, and any information which it now has or may hereafter obtain concerning the Undersigned.

FOURTEENTH: Immediately upon demand, the Undersigned will deposit with the Company, as collateral security, money or other collateral satisfactory to the Company, equal to (1) the liability of the Company, if established; (2) the liability asserted against the Company; or (3) the reserve established by the Company, or any increase thereof, to cover any liability for any loss or expense for which the Undersigned may be obligated to indemnify the Company under the terms of this Agreement. The Company shall have the right to use the collateral, or any part thereof, in payment or settlement of any liability, loss or expense for which the Undersigned is or would be obligated to indemnify the Company under the terms of

this Agreement. The Company shall have no obligation to invest or to provide a return on the collateral. The Undersigned shall be entitled to the refund of any unused portion of the collateral upon termination of the liability of the Company on all Bonds and the performance by the Undersigned of all obligations to the Company under the terms of this Agreement. The Company's demand shall be sufficient if sent by regular first class, registered or certified mail, by facsimile transmission, electronic mail or digital transmission, or by personal service to the Undersigned, regardless of whether actually received.

FIFTEENTH: This Agreement shall constitute a Security Agreement to the Company and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. This Agreement shall, if recorded, constitute a consensual lien upon any and all real estate owned by or held in trust for the benefit of the Undersigned at the time of such recording. However, the filing or recording of this Agreement shall be solely at the option of the Company, and the failure to do so shall not release or impair any of the obligations of the Undersigned under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of the Company under this Agreement or otherwise. The use of this Agreement as a Security Agreement, Financing Statement or for a consensual lien shall in no way abrogate, restrict or limit the rights of the Company under this Agreement or at law or in equity.

SIXTEENTH: The Company, at its option and in its sole discretion, may decline to execute or issue any Bond without incurring any liability to the Undersigned. If the Company issues a bid bond or similar undertaking and the Contractor is successful in bidding the project, the Company may nevertheless decline to issue the performance bond, the payment bond, or any other bond required by the awarding entity, without incurring any liability to the Undersigned, and the Undersigned agree that such a bid bond is a Bond to which this Agreement applies. For the purpose of this Agreement, the term "bid bond" shall be understood to mean the bid bond itself and any other document issued in conjunction with the bid bond or attached thereto, including but not limited to a consent of surety form attached to and/or made a part of the bid bond. The Undersigned acknowledge that the Company makes no representation as to the validity or acceptability of any Bond issued under the terms of this Agreement to any party under any particular contract, specification or similar requirement.

SEVENTEENTH: Upon any demand being made, notice given, or action or proceeding commenced against the Contractor for which the Company may be held liable in whole or in part, the Undersigned will immediately cause written notice thereof to be given by certified mail to the Company at its Home Office in West Des Moines, Iowa. In the event of suit or legal proceedings against the Company upon or on account of any such Bond, the Company shall have the right to apply to the court in which such action is brought for an order making the Undersigned defendants, and the Undersigned hereby consent to the granting of such application and agree to become such a party defendant, and in the event any judgment be rendered against the Company, to allow judgment in like amount to be rendered against the Undersigned in favor of the Company, if the Company so requests. The Undersigned shall fully cooperate with the Company in the defense of any claims or suits brought against the Company. As to any legal action or proceeding related to this Agreement, the Undersigned consent to the general jurisdiction of any local, state, or federal court of competent subject matter jurisdiction and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis. The Undersigned further waive personal service of any and all process.

EIGHTEENTH: The Indemnitors warrant that each of them is specifically and beneficially interested in obtaining each Bond. In case the execution hereof by any of the parties is defective or invalid for any reason, such defect or invalidity, or failure to execute, or termination hereof by any party, shall not in any manner affect the validity of this Agreement or the liability hereunder as to any or all of the other parties executing this Agreement, who shall remain fully bound and liable hereunder to the same extent as if such failure, defect, invalidity or termination had not occurred. If any provisions of this Agreement are void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be voided or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted. The rights and remedies afforded the Company by this Agreement shall not be waived or modified orally. The Company shall be entitled to enforce the obligations of this Agreement directly against the Indemnitors, or any one of them, without the necessity of first proceeding against the Contractor.

NINETEENTH: Each of the Undersigned expressly recognizes and covenants that this Agreement is a continuing obligation applying to and indemnifying the Company as to any and all Bonds heretofore or hereafter executed by it. This Agreement applies to Bonds executed by the Company on behalf of any of the Undersigned and any and all of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures whether open or silent, jointly, severally, or in any combination with each other, now in existence or which may hereafter be created or acquired.

TWENTIETH: Each of the Undersigned may notify the Company of such Undersigned's withdrawal from this Agreement. Such notice shall be in writing, sent by certified mail to the Company's Home Office, and shall state when, not less than thirty days after receipt of such notice by the Company, such withdrawal shall be effective. Such Undersigned will not be liable under this Agreement as to any bonds executed by the Company after the effective date of such notice. However, as to any and all Bonds executed or authorized by the Company prior to the effective date of such notice, and as to any and all renewals, continuations and extensions thereof or substitutions therefore, and, as to a proposal or bid Bond executed or authorized prior to such effective date, and as to any contract Bond executed pursuant to any such proposal or bid Bond, regardless of when the same are executed, such Undersigned shall be and remain fully liable hereunder, as if said notice had not been given.

TWENTY-FIRST: THE UNDERSIGNED REPRESENT TO THE COMPANY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT INCLUDING THIS PAGE AND THE FIVE PRECEEDING PAGES AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.

EACH OF THE UNDERSIGNED, TO THE EXTENT THAT THEY ARE SIGNING ON BEHALF OF A CORPORATION, LIMITED LIABILITY COMPANY, PARTNERSHIP, TRUST OR LIKE ENTITY, HEREBY AFFIRMS TO THE COMPANY THAT HE OR SHE IS THE SECRETARY OR DULY AUTHORIZED OFFICER, MANAGER, MEMBER, PARTNER, TRUSTEE, OR OFFICIAL OF EACH OF THE ENTITIES WHICH ENTERS INTO THE FOREGOING AGREEMENT AS INDEMNITOR.  IN SUCH CAPACITY, THE UNDERSIGNED IS FAMILIAR WITH ALL OF THE DOCUMENTS THAT SET FORTH AND ESTABLISH THE RIGHTS WHICH GOVERN THE AFFAIRS, POWER AND AUTHORITY OF SUCH ENTITY INCLUDING, TO THE EXTENT APPLICABLE, THE CERTIFICATE OR ARTICLES OF INCORPORATION, BYLAWS, CORPORATE RESOLUTIONS, AND PARTNERSHIP, OPERATING OR LIMITED LIABILITY AGREEMENTS, TRUST AGREEMENTS, AND/OR OTHER RELEVANT DOCUMENTATION GOVERNING THE OPERATION OF THE ENTITY.  HAVING REVIEWED ALL SUCH APPLICABLE DOCUMENTS AND INSTRUMENTS AND SUCH OTHER FACTS AS DEEMED APPROPRIATE, THE UNDERSIGNED HEREBY AFFIRMS THAT SUCH ENTITY HAS THE POWER AND AUTHORITY TO ENTER INTO SUCH AGREEMENT AND THAT THE INDIVIDUAL EXECUTING SUCH AGREEMENT ON BEHALF OF SUCH ENTITY IS DULY AUTHORIZED TO DO SO.

TWENTY-SECOND:

CONTRACTOR _____ Tier Electric of Central Florida, Inc. _____

*DocuSigned by:*
**John Williamson**
—F792EE33BD9E439…

BY _____John Williamson_____   9/9/2021
(print or type name)

TITLE _____President_____
(print or type title)

### INDIVIDUAL INDEMNITOR

*DocuSigned by:*
**David Hoffman**
—31280CA0BC94457…

BY _____David Hoffman_____   9/9/2021
(print or type name)

*DocuSigned by:*
**Jerrilyn Hoffman**
—31280CA0BC94457…

BY _____Jerrilyn Hoffman_____   9/9/2021
(print or type name)

BY _____
(print or type name)

BY _____
(print or type name)

BY _____
(print or type name)

BY _____
(print or type name)

BY _____
(print or type name)

BY _____
(print or type name)

BY _____
(print or type name)

BY _____
(print or type name)

### INDEMNIFYING ENTITY/ADDITIONAL CONTRACTOR

ENTITY NAME _____Hoffman Tier Electric LLC_____

*DocuSigned by:*
**Jerrilyn Hoffman**
—31280CA0BC94457…

BY _____Jerrilyn Hoffman_____   9/9/2021
(print or type name)

TITLE _____Managing Member_____
(print or type title)

ENTITY NAME _____

BY _____
(print or type name)

TITLE _____
(print or type title)

ENTITY NAME _____

BY _____
(print or type name)

TITLE _____
(print or type title)

COLL 0019 (11/17)                           7

**DocuSign**

## Certificate Of Completion

Envelope Id: B006A00ADF364FE28D0665B9909344D3  
Subject: Tier Electric of Central Florida, Inc. - DocuSign GIA  
Source Envelope:  
Document Pages: 7  
Certificate Pages: 6  
AutoNav: Enabled  
EnvelopeId Stamping: Enabled  
Time Zone: (UTC-06:00) Central Time (US & Canada)

Signatures: 4  
Initials: 0

Status: Completed

Envelope Originator:  
Kelli Heffernan  
6700 Westown Parkway  
West Des Moines, IA  50266  
kheffernan@merchantsbonding.com  
IP Address: 216.81.149.97

## Record Tracking

Status: Original  
    9/9/2021 9:05:52 AM

Holder: Kelli Heffernan  
    kheffernan@merchantsbonding.com

Location: DocuSign

## Signer Events | Signature | Timestamp

**John Williamson**  
jwilliamson@tier-electric.com  
President  
Tier Electric of Central Florida  
Security Level: Email, Account Authentication (None), Authentication

*Signed by: John Williamson*  
F792EE33BD9E439...

Signature Adoption: Pre-selected Style  
Using IP Address: 70.88.33.106

Sent: 9/9/2021 9:15:50 AM  
Viewed: 9/9/2021 9:35:29 AM  
Signed: 9/9/2021 9:36:06 AM

**Authentication Details**  
ID Check:  
    Transaction: 31011807120515  
    Result: passed  
    Vendor ID: LexisNexis  
    Type: iAuth  
    Recipient Name Provided by: Recipient  
    Information Provided for ID Check: Address, SSN9, SSN4, DOB  
    Performed: 9/9/2021 9:35:20 AM

Question Details:  
    passed   property.association.single.real  
    passed   corporate.association.fake  
    passed   county.lived.single.real  
    passed   vehicle.association.real  
    passed   corporate.association.real  
    passed   vehicle.historical.association.real

**Electronic Record and Signature Disclosure:**  
    Accepted: 9/9/2021 9:35:29 AM  
    ID: ac9ac5bc-a053-434d-a0c6-5f3599d5e0ff

**David Hoffman**  
kmorrison@ospreycapitalllc.com  
Hoffmann Commercial Real Estate  
Security Level: Email, Account Authentication (None), Authentication

*Signed by: David Hoffman*  
31280CA0BC94457...

Signature Adoption: Pre-selected Style  
Using IP Address: 173.161.64.237

Sent: 9/9/2021 9:15:51 AM  
Viewed: 9/9/2021 3:15:22 PM  
Signed: 9/9/2021 3:16:54 PM

**Authentication Details**  
ID Check:  
    Transaction: 31011816033355  
    Result: passed  
    Vendor ID: LexisNexis  
    Type: iAuth  
    Recipient Name Provided by: Recipient  
    Information Provided for ID Check: Address  
    Performed: 9/9/2021 3:15:11 PM

Question Details:  
    failed   vehicle.historical.association.real  
    passed   person.age.real  
    failed   vehicle.historical.association.real  
    passed   property.street.in.city.real  
    passed   corporate.association.fake  
    passed   county.lived.single.real

**Electronic Record and Signature Disclosure:**  
    Accepted: 9/9/2021 3:15:22 PM  
    ID: 9753ad98-4b73-4c27-aa7e-d81705f8bd0e

| Signer Events | Signature | Timestamp |
|---|---|---|
| Jerrilyn Hoffman<br>kmorrison@ospreycapitalllc.com<br>Hoffmann Commercial Real Estate<br>Security Level: Email, Account Authentication (None), Authentication | DocuSigned by:<br>*Jerrilyn Hoffman*<br>31280CA0BC94457...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 173.161.64.237 | Sent: 9/9/2021 9:15:51 AM<br>Viewed: 9/9/2021 3:19:08 PM<br>Signed: 9/9/2021 3:19:20 PM |

**Authentication Details**
ID Check:
    Transaction: 31011816115345
    Result: passed
    Vendor ID: LexisNexis
    Type: iAuth
    Recipient Name Provided by: Recipient
    Information Provided for ID Check: Address
    Performed: 9/9/2021 3:19:02 PM

Question Details:
    passed    property.city.fake
    passed    person.age.real
    passed    property.county.real
    passed    vehicle.color.real
    passed    person.city.real
    passed    corporate.association.real

**Electronic Record and Signature Disclosure:**
    Accepted: 9/9/2021 3:19:08 PM
    ID: 1cfc74ab-61ad-45c5-9758-e90911b3630f

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Aaron Finken<br>afinken@merchantsbonding.com<br>Sr Contract Underwriter<br>Security Level: Email, Account Authentication (None)<br><br>**Electronic Record and Signature Disclosure:**<br>    Accepted: 3/24/2021 3:55:42 PM<br>    ID: a9d73687-b51d-433c-a573-c529de46659f | COPIED | Sent: 9/9/2021 9:18:53 AM<br>Viewed: 9/9/2021 9:20:38 AM |
| Bryce Guignard<br>bryce@guignardcompany.com<br>President<br>Security Level: Email, Account Authentication (None)<br><br>**Electronic Record and Signature Disclosure:**<br>    Accepted: 7/9/2018 10:37:33 AM<br>    ID: 3e2b42c0-0bff-45a8-9f24-8db030c3244e | COPIED | Sent: 9/9/2021 9:18:53 AM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/9/2021 9:15:51 AM |
| Certified Delivered | Security Checked | 9/9/2021 3:19:08 PM |
| Signing Complete | Security Checked | 9/9/2021 3:19:20 PM |
| Completed | Security Checked | 9/9/2021 3:19:20 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 3/14/2017 2:50:43 PM
Parties agreed to: John Williamson, David Hoffman, Jerrilyn Hoffman, Aaron Finken, Bryce Guignard

**ESIGN CONSENT TO USE ELECTRONIC RECORDS AND SIGNATURES**
**Your Consent To Use Electronic Records And Signatures; Certain Information Must Still Be Provided In Writing**
From time to time, Merchants Bonding Company (Mutual) and Merchants National Bonding, Inc. (collectively, â€œweâ€, â€œusâ€ or â€œMerchantsâ€) may provide you with certain notices, disclosures, contracts, or other records, some of which are required by law to be â€œin writingâ€. The federal E-SIGN Act and certain state laws allow us to provide you these written notices, disclosures, contracts or other records electronically with your consent. These laws also allow the use of electronic signatures. Described below are the terms and conditions for providing you such notices, disclosures, contracts or other records electronically as well as to use electronic signatures. This consent relates to any electronic records or signatures associated with any of your Merchants accounts, contracts, bonds/policies and other business records so long as you continue to do business with Merchants. In our sole discretion, the information we provide to you, or that you sign or agree to at our request, may be in electronic form (â€œElectronic Recordsâ€). We reserve the right to provide you notices, disclosures, contracts or other records in paper, even if you have consented to receive Electronic Records. Please read the information below thoroughly and, if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your acceptance to this agreement by clicking the â€˜I agreeâ€™ button at the bottom of this document.

**Right To Have Records Provided On Paper**
At any time, you may request from us paper copies of any Electronic Records at no cost to you. You may request delivery of paper copies by contacting your Merchants Bonding Company representative and requesting a paper version. If you donâ€™t have contact information for your representative you may email your request to info@merchantsbonding.com stating your full name, business name, if applicable, US Postal address, telephone number and the specific record for which you wish to receive a paper copy. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you.

Sometimes the law, or our agreement with you, requires you to give us a written notice. You must still provide these notices to us on paper, unless we specifically tell you in another Communication how you may deliver that notice to us electronically. There are certain Communications that by law we are not permitted to deliver to you electronically, even with your consent. So long as required by law, we will continue to deliver those Communications to you in writing. However, if the law changes in the future and permits any of those Communications to be delivered as Electronic Records, this consent will automatically cover those Communications as well.

**Right To Withdraw Your Consent To Receive Electronic Records**
You have the right to withdraw your consent at any time. Your withdrawal of consent will become effective after we have had a reasonable opportunity to act upon it. To withdraw your consent, you must inform us of your decision by contacting your Merchants Bonding Company representative. If you donâ€™t have contact information for your representative you may email your request to info@merchantsbonding.com stating your full name, business name, if applicable, US Postal Address, and telephone number. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign â€˜Withdraw Consentâ€™

form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**Your Contact Information; To Advise Merchants Of Your New E-mail Address**

To let us know of a change in your e-mail address where we should send Electronic Records to you, contact your Merchants Bonding Company representative. If you donâ€™t have contact information for your representative you may email your request to info@merchantsbonding.com stating your new e-mail address, old e-mail address, full name, business name, if applicable, US Postal address, and telephone number.

In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**Required Hardware And Software**

| Operating Systems: | WindowsÂ® 2000, WindowsÂ® XP, Windows VistaÂ®; Mac OSÂ® X |
|---|---|
| Browsers: | Final release versions of Internet ExplorerÂ® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safariâ„¢ 3.0 or above (Mac only) |
| PDF Reader: | AcrobatÂ® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change and that change would create a material risk that you would not be able to access or retain your Electronic Records, we will give you notice of the revised hardware or software requirements. Continuing to use Electronic Services after receiving notice of the change is reaffirmation of your consent.

**Acknowledging Your Access And Consent To Receive Materials Electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving any notices, disclosures, contracts or other records in electronic format on the terms and conditions described above, please let us know by clicking the â€˜I agreeâ€™ button below.

By checking the â€˜I agreeâ€™ box, I confirm that:

- I can access and read this Electronic ESIGN CONSENT TO USE ELECTRONIC RECORDS AND SIGNATURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Merchants as described above, I consent to receive through electronic means any notices, disclosures, contracts or other records that are required to be provided or made available to me by Merchants during the course of my relationship with you.