UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MERCHANTS NATIONAL BONDING,
INC.,

      Plaintiff,

v.                                                         Case No.: 2:24-cv-01034

DAVID H. HOFFMANN, JERRILYN M.
HOFFMANN, TIER ELECTRIC OF
CENTRAL FLORIDA, INC., and
HOFFMANN TIER ELECTRIC, LLC,

      Defendants.

_____/

## MERCHANTS' MOTION TO DISMISS COUNTS II, V, VI, AND VII OF DEFENDANTS' FIRST AMENDED COUNTERCLAIM, AND MOTION TO STRIKE DEFENDANTS' JURY TRIAL DEMAND

Merchants National Bonding, Inc. ("Merchants"), through counsel, and pursuant to Rules 12(b)(6) and 12(f), Fed. R. Civ. P., and Local Rule 3.01, moves to dismiss Counts II, V, VI, and VII of Defendants', David H. Hoffmann, Jerrilyn M. Hoffmann, Tier Electric of Central Florida, Inc. ("Tier Electric"), and Hoffmann Tier Electric, LLC ("Defendants"), First Amended Counterclaim ("Counterclaim"), (Doc. 35), and to strike Defendants' jury trial demand included therein.

### INTRODUCTION

At its core, this is a simple breach of contract case in which Merchants seeks to enforce its contractual indemnity rights against the Defendants to recover losses it suffered as surety for Tier Electric, following Tier's default on a project in Naples,

Florida. Notwithstanding the simplicity of Merchants' Complaint, and Defendants' clear and unambiguous obligations to Merchants, Defendants' Counterclaim seeks to turn this case into something it is not: a case of fraud in the inducement, breaches of various contracts, unjust enrichment, and intentional interference with a contract. For all its fiery rhetoric, spanning nearly 60 pages, Defendants' Counterclaim suffers from basic pleading defects justifying dismissal and the striking of various claims and prayers for relief.

Specifically, Defendants: (1) asserted a claim for Breach of Contract (Count VII) as to Merchants' payment and performance bonds despite not having standing to bring such a claim; (2) commingled multiple disparate claims and dissimilarly situated parties within singular claims for declaratory judgment and breach of contract (namely, Counts II, V, VI, and VII); and (3) demanded a jury trial in contravention of their knowing and voluntary waiver of such right.

The day will come to test the merits of Defendants' other claims.[1] However, at present, the law and the facts on the issues addressed herein indisputably justify dismissing and striking several of Defendants' claims and prayers for relief.

---

[1] Even though this Motion seeks a dismissal of some but not all of the claims in Defendants' Counterclaim, this Court has held, consistent with a majority of courts considering the question, that "a party need not file an answer while a partial motion to dismiss is pending." *Jacques v. First Liberty Ins. Corp.*, No. 8:16-CV-1240-T-23TBM, 2016 WL 3221082, at *1 (M.D. Fla. June 9, 2016); *see also Beaulieu v. Bd. of Trustees of Univ. of W. Florida*, No. 3:07CV30 RVEMT, 2007 WL 2020161, at *2 (N.D. Fla. July 9, 2007) ("Defendant's motion to dismiss . . . automatically extends its time to answer under Rule 12(a)(4) until after the court has ruled on Defendant's motion to dismiss."). As a result, Merchants expressly reserves all rights, claims, and defenses to the Counterclaim, including, but not limited to, the right to contest Defendants' premature demand for punitive damages in Count IV. (Doc. 35, p. 47).

## PERTINENT FACTS

### The GIA.

1.      Merchants' and Defendants' contractual relationship stems from a General Application and Agreement of Indemnity (the "GIA")[2] Defendants executed in Merchants' favor. Complaint, ¶ 12 (Doc. 1, p. 4); Answer, ¶ 12 (Doc. 21, p. 4-5). Defendants attached a copy of the GIA as Exhibit 2 to the Counterclaim. (Doc. 35-2).

2.      The Tenth paragraph of the GIA provides, in pertinent part, that:

> [t]he Undersigned hereby waive trial by jury in any action or proceeding pertaining to this Agreement. This waiver is knowingly, willingly and voluntarily made by the Undersigned, and the Undersigned represent and warrant that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect.

(Doc. 1-3, p. 4).

3.      The Twenty-First paragraph of the GIA further provides that: "THE UNDERSIGNED REPRESENT TO THE COMPANY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT INCLUDING THIS PAGE AND THE FIVE PRECEEDING PAGES AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN." (Doc. 1-3, p. 6).

---

[2] For ease of reference, Merchants will refer to the various documents at issue by the title Defendants have ascribed to them in their Counterclaim.

**The Bonds.**

4.      At the request of one or more of the Defendants, Merchants issued a Subcontract Payment Bond (the "Payment Bond") and Subcontract Performance Bond (the "Performance Bond") (collectively, the "Bonds"), both naming Tier Electric as principal, and Suffolk Construction Company, Inc. ("Suffolk"), as obligees, with respect to Tier Electric's subcontract (the "Subcontract") on a project referred to as VI Bentley Village – Addition & Renovation, Job #221092, located in Naples, Florida (the "Project"). Complaint, ¶ 23 (Doc. 1, p. 7); Answer, ¶ 23 (Doc. 21, p. 8). Defendants attached copies of the Bonds as Exhibit 3 to their Counterclaim. (Doc. 35-3).

5.      Section 2.1 of the Payment Bond provides, in pertinent part, that

> [t]he Principal and Surety hereby jointly and severally agree with the Obligee that every Claimant, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such Claimant's work or labor was done or performed, or materials furnished by such Claimant, for which claim is made, may have a right of action on this bond.

(Doc. 35-3, p. 3).

6.      Section 2.2 of the Payment Bond then sets forth several conditions that a Claimant must meet before filing a suit or action on the Payment Bond. (Doc. 35-3, p. 3).

7.      The Payment Bond defines "Claimant" as "an Individual or entity having a direct contract with the Principal to furnish labor, materials or equipment for use in the performance of the Subcontract or any individual or entity having valid lien

4

rights which may be asserted in the jurisdiction where the Project is located." (Doc. 35-3, p. 4).

8.   Section 1 of the Performance Bond, titled "Scope of Bond," provides, in pertinent part, that: "[t]he Principal and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Obligee," i.e., Suffolk, "for the performance of the Subcontract, which is incorporated in this bond by reference." (Doc. 35-3, p. 6).

9.   Section 5 of the Performance Bond, titled "Right of Action," provides that "[n]o right of action shall accrue on this bond to or for the use of any person or entity other than the Obligee named herein," again, Suffolk, including "its heirs, executors, administrators or successors." (Doc. 35-3, p. 6).

**The Promissory Note.**

10.   On or about March 3, 2023, Merchants, on the one hand, and Tier Electric and Mr. Hoffmann, on the other, entered a Promissory Note and Security Agreement ("Promissory Note"), a copy of which Defendants attached as Exhibit 4 to their Counterclaim. (Doc. 35-4).

11.   Mrs. Hoffmann is not a party to the Promissory Note.

12.   In the Promissory Note, Tier Electric and Mr. Hoffmann agreed and acknowledged that "the taking of this note by [Merchants] does not waive, alter or modify any indemnity or security agreements" they previously executed in favor of Merchants, including, but not limited to, the GIA. (Doc. 35-4, p. 2-3).

**The Settlement Agreement.**

13.     Following Suffolk's December 19, 2022, Notice of Default, in which Suffolk outlined various defaults and breaches of Tier Electric on the Project, Suffolk, Tier Electric, and Merchants entered a Performance Bond Release and Assignment dated June 13, 2023 (herein, the "Settlement Agreement"), a copy of which is attached as Exhibit 5 to Defendants' Counterclaim. (Doc. 35-5).

14.     Under section 14 of the Settlement Agreement, the parties agreed that the release provisions contained therein did not include or in any way modify or limit the GIA, and did not otherwise "release or in any way modify any other written agreements or documents executed by Principal, David Hoffman [sic], Jerrilynn Hoffman [sic], and Hoffman [sic] Tier Electric LLC for the benefit of Surety." (Doc. 35-5, p. 6).

15.     Further, the parties agreed that the GIA and any other written agreements between Merchants and the Defendants "shall remain in full force and effect after the complete execution of this Agreement and shall not merge into or otherwise become included within or limited by this Release." (Doc. 35-5, p. 6).

16.     Merchants unequivocally reserved all its "rights, remedies, claims and defenses" against the Defendants. (Doc. 35-5, p. 6).

17.     In section 15 of the Settlement Agreement, Tier Electric, among others, "acknowledge[d] that they have fully read and understand fully the terms and conditions of this Release, and have consulted or had the opportunity to consult with counsel regarding this Release." (Doc. 35-5, p. 6).

18.    Further, section 20 of the Release and Assignment, titled "Waiver of Jury Trial," provides, in full: "THE PARTIES HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, LAWSUIT, PROCEEDING, CLAIM, OR COUNTERCLAIM ARISING OUT OF, RELATING TO, OR CONNECTED WITH, THIS AGREEMENT." (Doc. 35-5, p. 7) (capitalization in original).

**The Parties' Claims in this Litigation.**

19.    On November 8, 2024, Merchants filed its Complaint against the Defendants and asserted a single cause of action for Breach of Contract (Count I) resulting from Defendants' material breach of the GIA. (Doc. 1).

20.    In their Answer, Defendants demanded, "pursuant to Local Rule 1.09 and Fed. R. Civ. P. 38, trial by jury of all issues so triable." (Doc. 21, p. 17).

21.    In light of the above-quoted unambiguous contractual jury trial waiver in the GIA, Merchants filed its Motion to Strike Defendants' Jury Trial Demand, (Doc. 36), as to Defendants' demand for jury trial in their Answer.

22.    On February 25, 2025, Defendants filed a First Amended Counterclaim that did not include or attach any referenced exhibits, (Doc. 34), and hours later filed the Counterclaim, which is seemingly identical but included and attached the referenced exhibits missing from the prior version. (Doc. 35). Like the demand in Defendants' Answer, the Counterclaim includes a "Demand for Jury Trial." (Doc. 35, p. 58).

## ARGUMENT

I. **Tier Electric and Mr. Hoffmann lack standing to assert a claim against the Bonds.**

Tier Electric's and Mr. Hoffmann's claim for Breach of Contract as to the Performance Bonde and Payment Bond (Count VII) fails for the simple reason that they lack standing to assert a claim against the Bonds. To reach this conclusion, the Court first need only look to the language of the Bonds themselves.

The Performance Bond's Right of Action provision, paragraph 5, clearly and unambiguously provides that "[n]o right of action shall accrue on this bond to or for the use of any person or entity *other than the Obligee named herein*," i.e., Suffolk, and "its heirs, executors, administrators or successors." (Doc. 35-3, pg. 6) (emphasis added). Tier Electric and Mr. Hoffmann are plainly not Suffolk, and they have not alleged (because they cannot allege) that they are heirs, executors, administrators or successors of Suffolk either.  Simply put, neither Tier Electric nor Mr. Hoffmann have any right of action against Merchants on the Performance Bond.

The Payment Bond similarly restricts those having any right of action against the Payment Bond. Specifically, section 2.1 of the Payment Bond provides, in pertinent part, that Merchants and Tier Electric:

> jointly and severally agree with the Obligee that every ***Claimant***, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such Claimant's work or labor was done or performed, or materials were furnished by such Claimant, for which claim is made, ***may have a right of action on this bond***.

(Doc. 35-3, p. 3) (emphasis added). The Payment Bond defines "Claimant" narrowly as "an Individual or entity having a direct contract with the Principal to furnish labor, materials or equipment for use in the performance of the Subcontract or any individual or entity having valid lien rights which may be asserted in the jurisdiction where the Project is located." (Doc. 35-3, p. 3).

Here, Tier Electric clearly does not have a direct contract with itself; rather, it is the principal under the Payment Bond and is the entity whose payment obligations Merchants guaranteed. Similarly, there is no allegation that Mr. Hoffmann has a direct contract with his own company, or that he has any "valid lien rights" with respect to the underlying Project. In short, because Tier Electric and Mr. Hoffmann do not fall within the definition of a "Claimant" under the Payment Bond, they have no right of action against the Payment Bond.

Instructive here, this Court and courts in other jurisdictions have strictly construed and applied similarly worded provisions in payment bonds to preclude parties (most often, obligees) not fitting the definition of a "claimant" from asserting a claim against the bond. *See, e.g., Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III*, No. 8:13-CV-128-T-24-TGW, 2014 WL 10915507, at *4 (M.D. Fla. June 16, 2014) (finding "the payment bond's definition of 'claimant,' in light of the bond's other provisions, cannot be reasonably construed to mean [the obligee]."); *Elm Haven Const. Ltd. P'ship v. Neri Const. LLC*, 376 F.3d 96, 100 (2d Cir. 2004) (construing similarly worded payment bond to preclude obligee, which did not fall within definition of

9

"claimant," from asserting claim against payment bond); *Am. Mfrs. Mut. Ins. Co. v. Sherborn Meadows, LLC*, No. CIV.A. 07-11711-DPW, 2008 WL 5396479, at *3 (D. Mass. Dec. 22, 2008) (similar). There is no reason for a different result here.

Further, the very purpose of the Bonds further reinforces Tier Electric's and Mr. Hoffmann's lack of standing.  For instance, a performance bond, like Merchants' here, generally "guarantees that the contractor [here, Tier Electric] will perform the contract, and usually provides that, if the contractor defaults and fails to complete the contract, the surety can itself complete the contract or pay damages up to the limit of the bond." *Ribeira & Lourenco Concrete Const. v. Jackson Health Care Associates*, 254 N.J. Super. 445, 451, 603 A.2d 976, 979 (App. Div. 1992).

The "purpose and only purpose" of a payment bond, on the other hand, is to "protect the owner against the claims of those who furnish labor and materials to the contractor . . . ." *Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III*, No. 8:13-CV-128-T-24-TGW, 2014 WL 10915507, at *4 (M.D. Fla. June 16, 2014) (quoting *Standard Acc. Ins. Co. of Detroit v. Rose*, 314 Ky. 233, 238, 234 S.W.2d 728, 731 (1950)); *Ribeira & Lourenco Concrete Const. v. Jackson Health Care Associates*, 254 N.J. Super. 445, 451, 603 A.2d 976, 979 (App. Div. 1992) (finding, in light of purpose of performance and payment bonds, "the principal has no standing to make a claim against the bonds themselves.").  In other words, the purpose of the Bonds is to guarantee Tier Electric's payment and performance obligations on the Project, not to provide Tier Electric – whose obligations Merchants guaranteed – or Mr. Hoffmann – a personal indemnitor

liable to Merchants for losses it incurs as a result of honoring its Bond obligations –
with standing to sue Merchants on the Bonds themselves.

As such, neither Tier Electric nor Mr. Hoffmann have standing to bring a claim
against the Bonds, and this Court should dismiss Count VII with prejudice.

## II.    Defendants impermissibly commingled separate and distinct claims.

This Court should dismiss Counts II, V, VI, and VII of the Counterclaim
because those counts run afoul of the prohibition against commingling separate and
distinct causes of action.  Rule 10(b) of the Federal Rules of Civil Procedure provides,
in pertinent part, that, "[i]f doing so would promote clarity, each claim founded on a
separate transaction or occurrence . . . must be stated in a separate count or defense."
Courts are resolute that a failure to separate each cause of action or claim for relief
into a different count renders a pleading an impermissible "shotgun pleading" that is
"flatly forbidden by the spirit, if not the letter" of the Federal Rules of Civil Procedure.
*Floral Logistics of Miami, Inc. v. New York Garden Flower Wholesale, Inc.*, No. 23-20073-
CIV, 2023 WL 5747335, at *2 (S.D. Fla. Aug. 18, 2023) (internal citation omitted);
*Burgess v. Royal Caribbean Cruises Ltd.*, No. 20-CV-20687, 2020 WL 13349026, at *2
(S.D. Fla. Oct. 9, 2020) (similar); *Bailey v. Bell-Rich Transp., LLC*, No. 3:19-CV-461-J-
34JBT, 2020 WL 3440585, at *5 (M.D. Fla. June 23, 2020) (similar).

Here, Count II is a singular claim for Declaratory Judgment as to two separate
contracts: the Promissory Note and the GIA. Whereas Tier Electric, Mr. Hoffmann
and Mrs. Hoffmann are all parties to the GIA, only Tier Electric and Mr. Hoffmann
are parties to the Promissory Note.  Similarly, Counts V and VI are each singular

claims for Declaratory Judgment, which this time concern not two but *three* separate contracts: the GIA, the Settlement Agreement, and the Promissory Note. Again, while Tier Electric, Mr. Hoffmann and Mrs. Hoffmann are all indemnitors under the GIA, only Tier Electric and Mr. Hoffmann are parties to the Promissory Note, and only Tier Electric is a party to the Settlement Agreement.  Finally, and even if Tier Electric and Mr. Hoffmann somehow have standing to assert a claim against the Bonds, which they do not, Count VII is a single claim for Breach of Contract as to two separate and distinct contracts – the Performance Bond and the Payment Bond – each with different terms, conditions, rights and obligations. Better practice compels dismissing these claims to be plead in separate and distinct causes of action.

In the alternative to dismissal, and in accordance with Rule 12(e), Fed. R. Civ. P., Merchants respectfully requests that this Court require Defendants to file a more definite statement as to Counts II, V, VI, and VII, and "present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that [Merchants] will be able to discern what the [Defendants are] claiming and to frame a responsive pleading." *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Doing so will relieve this Court of the "cumbersome task of sifting through myriad claims, many of which [may be] foreclosed by [various] defenses." *Id.*

### III.    Defendants knowingly and voluntarily waived their right to a jury trial.

The Court should strike Defendants' demand for a jury trial since Defendants knowingly, voluntarily, and unambiguously waived their right to a jury trial in the

GIA and Settlement Agreement. Critically, this waiver applies to every one of Defendants' claims against Merchants in the Counterclaim.

This Court has recognized that federal law governs the right to a jury trial in the federal courts, and whether parties have waived that right. *Benoit v. Silverio*, No. 2:23-CV-1070-JES-NPM, 2024 WL 1597705, at *2 (M.D. Fla. Apr. 12, 2024). So long as a waiver is knowing and voluntary, courts have found that parties may validly waive their Seventh Amendment right to a jury trial. *Id.*

Courts consider several factors when reviewing an alleged waiver, including "the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable." *Id.* (internal citation omitted). This Court has made clear, however, that "[n]o single factor is determinative; instead, enforceability is based on a totality of circumstances and hinges on whether the Court deems the waiver 'unconscionable, contrary to public policy, or simply unfair.'" *Aponte v. Brown & Brown of Florida, Inc.*, No. 618CV161ORL22GJK, 2019 WL 12536008, at *5 (M.D. Fla. Feb. 21, 2019), *aff'd,* 806 Fed. Appx. 824 (11th Cir. 2020) (quoting *Winiarski v. Brown & Brown, Inc.*, No. 5:07-CV-409-OC-10GRJ, 2008 WL 1930484, at *2 (M.D. Fla. May 1, 2008)). Merchants submits that each factor weighs in favor of enforcement of waivers in the GIA and Settlement Agreement here.

*First*, there is no question that the waivers are conspicuous. With respect to the GIA, the waiver is printed in the same font and font size as the rest of the document, and worded in simple, clear and unambiguous language. Even though it is not set off

13

in a separate paragraph, it makes up two out of the three sentences of the paragraph in which it is set. *See also Milsap v. Cornerstone Residential Mgmt., Inc.*, No. 05-60033-CIV, 2007 WL 965590, at *1 (S.D. Fla. Mar. 28, 2007) (enforcing jury trial waiver in last sentence of one paragraph of lease, not set out in separate paragraph, since it was, however, written in same font as all other paragraphs and clearly stated that "[t]he Resident hereby waives Resident's right to demand a jury trial in any cause of action arising between Landlord and Resident concerning this contract.").

The waiver in the Settlement Agreement is similarly conspicuous. It is in its own separate paragraph, under a heading titled "Waiver of Jury Trial," and is set forth in capital letters in a single, concise sentence. *See Hamilton v. Sheridan Healthcorp, Inc.*, No. 13-62008-CIV, 2014 WL 537343, at *2 (S.D. Fla. Feb. 11, 2014) (finding waiver provision in all capital letters set forth in "a single, concise sentence clearly stating that the parties to the contract waive any rights to a jury trial," was "highly conspicuous.").

*Second*, concerning the parties' bargaining power, "the question is not whether there was unequal bargaining power but whether there was a gross disparity in bargaining power." *Benoit*, 2024 WL 1597705, at *2 (internal citation omitted). A gross disparity in bargaining power exists only when the party is "unable to simply walk away if the terms are unacceptable." *Id.* (internal citation omitted).

With regard to the opportunity to negotiate terms, "a jury trial waiver in a 'take it or leave it' situation does not make the waiver unenforceable or unconscionable." *Winiarski v. Brown & Brown, Inc.*, No. 5:07-CV-409-OC-10GRJ, 2008 WL 1930484, at *2 (M.D. Fla. May 1, 2008) (fact that plaintiff was required to sign employment

agreement or she would not have been hired does not "render the relative bargaining power of the parties grossly unequal nor is such a fact evidence that the waiver was made under duress."). And "[s]imply because a party did not negotiate the language of a jury trial waiver does not meant that the waiver or other terms in the agreement were non-negotiable." *Oglesbee v. IndyMac Fin. Services, Inc.*, 675 F. Supp. 2d 1155, 1158 (S.D. Fla. 2009).

With respect to the GIA, even if it were a "take it or leave it" situation, Defendants could have simply elected to walk away and seek bonding elsewhere. Instead, Defendants knowingly and voluntarily signed the GIA after carefully reading the entire agreement, which they acknowledged doing in the Twenty-First paragraph of the GIA, and after specifically acknowledging with respect to the waiver itself that it was "knowingly, willingly and voluntarily made . . . ." (Doc. 1-3, p. 6).

Moreover, courts in other contexts have dispensed with "unconscionability" arguments and found that sureties routinely require principals and indemnitors to execute written indemnity agreements as a precondition to the issuance of bonds, like Merchants did here. They have specifically found that "[s]ureties draft their indemnity agreements broadly and with extensive protections, and courts, understanding the importance of the indemnity agreement, consistently enforce the agreements and the remedies granted to the sureties." *Developers Sur. & Indem. Co. v. Magna Constr., Inc.*, No. 07-22753-CIV, 2008 WL 11333900, at *5 (S.D. Fla. Sept. 16, 2008). This applies as equally to the jury trial waiver here as it does any other provision of the GIA.

Likewise, with respect to the Settlement Agreement, Tier could have simply walked away but instead chose to sign the Settlement Agreement. In doing so, it acknowledged that it "fully read and underst[ood] fully the terms and conditions of this Release" and had "consulted or had the opportunity to consult with counsel regarding this Release." (Doc. 35-5, p. 6).

*Third*, and assuming without admitting the veracity of Defendants' own allegations, Defendants' Counterclaim speaks to their level of sophistication: Mr. Hoffmann, a self-professed "entrepreneur and business executive, [and] one of the principals of a family of companies which operate in sectors ranging from agriculture to hospitality & entertainment to real estate," and Mrs. Hoffmann, "one of the other principals of the Hoffmann family of companies. (Doc. 35, ¶¶ 9-10).  As for Tier Electric, Defendants represented that, as of February 2020, "Tier was a modest-sized commercial contractor with approximately 70 employees and $9.25 million in annual revenue." (Doc. 35, ¶ 11).

Separately, with respect to its breadth or application, there is no question that the jury trial waiver in the GIA applies to each of Defendants' claims. Indeed, the waiver broadly applies to "any action or proceeding pertaining to this Agreement." (Doc. 35-2, p. 6). There is no question that this action and each and every one of Defendants' claims "pertain to" the GIA insofar as the GIA is the spring from which the Defendants' relationship with Merchants bubbled forth. *See Pearson v. Countrywide Home Loans, Inc.*, No. 8:13-CV-1075-T-17AEP, 2015 WL 506326, at *3 (M.D. Fla. Feb. 6, 2015) (jury trial waiver broadly applied to all claims in plaintiff's complaint,

16

including claims for violation of Truth in Lending Act, violation of the Real Estate Settlement Procedures Act, breach of fiduciary duty, negligent supervision, and violation of Florida's Deceptive and Unfair Trade Practices Act insofar as such claims "arise out of or are related to" the agreement containing the waiver).  In other words, but for the Defendants' execution of the GIA, there would be no Bonds relating to the Subcontract and Project, no Promissory Note, and no Settlement Agreement.

The Settlement Agreement's waiver is similarly broad in its application. Like the GIA, the waiver in the Settlement Agreement applies to any action, lawsuit, proceeding, claim or counterclaim "arising out of, relating to, or connected with" the Settlement Agreement. (Doc. 35-5, p. 7) (without capitalization emphasis).  Thus, standing on its own, the Settlement Agreement's waiver precludes, at a minimum, a jury trial as to Counts V, VI, X, XI, XII, and XIII, insofar as each of those claims pertain, in whole or in part, to the Settlement Agreement. *See, e.g.,* Count V, ¶¶ 137-138 (alleging that Merchants cannot recover from Defendants certain amounts it paid to Suffolk under the Settlement Agreement); Count VI, ¶¶ 144 & 147 (alleging that "Suffolk was not entitled to delay damages under the Settlement Agreement . . . ."); Count X (Breach of Contract – Settlement Agreement); Count XI, ¶ 177 (alleging "it would be inequitable for Merchants to retain the benefit of Tier's services outside the scope of the Settlement Agreement without paying for it."); Count XII, ¶¶ 181-182 & 185 (alleging it would be inequitable for Merchants to retain the benefit of Tier's forfeiture of the Subcontract Balance and supplying of certain materials pursuant to the Settlement Agreement); and Count XIII, ¶¶ 190-191 (alleging Merchants'

negotiation of the Settlement Agreement's terms resulted in Suffolk failing to perform its obligations to Tier, which resulted in Tier losing the benefit of the Subcontract Balance and being "forced to close its business resulting in a loss to its owners equal to the value of that business.").

In sum, each one of the factors weigh, resoundingly, in favor of enforcing the GIA's and Settlement Agreement's jury trial waivers here as to all of Defendants' claims in the Counterclaim.

## CONCLUSION

Setting aside the length and rhetoric of the Counterclaim, the facts and the law applicable to the present Motion are clear: Tier Electric and Mr. Hoffmann do not have standing to sue Merchants for breach of the Bonds; Defendants have impermissibility commingled separate and distinct claims, relating to multiple contracts and dissimilarly situated parties; and Defendants knowingly and voluntarily waived any right to a jury trial they claim to have with respect to their Counterclaim.

WHEREFORE, Merchants respectfully requests this Court enter an Order:

a.    Granting this Motion;

b.    Dismissing Count VII of the Counterclaim, with prejudice;

c.    Dismissing Counts II, V, VI, and VII (if not dismissed with prejudice above), without prejudice, or, alternatively, requiring Defendants to file a more definite statement as to Counts II, V, VI, and VII and present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and

precision that Merchants will be able to discern what the Defendants are claiming and to frame a responsive pleading;

d.      Striking Defendants' Demand for Jury Trial; and

e.      Granting such further and other relief as this Court deems just and proper.

## CERTIFICATION UNDER LOCAL RULE 3.01(g)

Pursuant to Local Rule 3.01(g), undersigned counsel for Merchants certifies that he conferred with Defendants' counsel, Hector Rivera, by phone on February 27, 2025, in a good faith effort to resolve the issues raised herein. The parties were unable to resolve any part of this Motion.

Respectfully submitted,

 /s/ Robert C. Graham, Jr.
BRETT D. DIVERS, ESQ.
Florida Bar No. 973246
bdivers@pdtlegal.com
ROBERT C. GRAHAM, JR., ESQ.
Florida Bar No. 105951
rgraham@pdtlegal.com
PASKERT DIVERS THOMPSON
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Counsel for Merchants National Bonding, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which provided electronic

notice to all counsel of record.

/s/ *Robert C. Graham, Jr.*
Attorney