UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MERCHANTS NATIONAL BONDING,
INC.,

       Plaintiff and
       Counter-
       Defendant,

v.                Case No.  2:24-cv-1034-JES-NPM

DAVID H. HOFFMANN, JERRILYN
M. HOFFMANN, TIER ELECTRIC
OF CENTRAL FLORIDA, INC.,
and HOFFMANN TIER ELECTRIC,
LLC,

       Defendants and
       Counter-
       Claimants.

_____

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Merchants National Bonding, Inc.'s ("Merchants" or "Plaintiff") Motion to Strike Jury Trial Demand (Doc. #36) from Defendants' Answer, Affirmative Defenses, and Counterclaim ("Answer") (Doc. #21). Also before the Court is Merchants' Motion to Dismiss Counterclaims II, V, VI, and VII, and Motion to Strike Jury Trial Demand (Doc. #38) from Defendants' First Amended Counterclaim ("FACC") (Doc. #35.) Defendants David H. Hoffmann ("Mr. Hoffmann"), Jerrilyn M. Hoffmann ("Mrs. Hoffmann"), Tier Electric of Central Florida, Inc. ("Tier"), and Hoffman Tier Electric, LLC ("HTE") (collectively, "Defendants") filed Responses in Opposition (Doc. #47, Doc. #48.)

With leave of Court (Doc. #50), Merchants filed a Reply (Doc. #53.)

For the reasons given below, the Motion to Strike Jury Trial Demand in Defendants' Answer (Doc. #36) is **GRANTED,** and the Motion to Dismiss and to Strike Jury Trial Demand in Defendants' FACC (Doc. #38) is **GRANTED IN PART** and **DENIED IN PART.**

## I.

Defendants were hired as electrical subcontractors for a construction project in Naples, Florida, by Suffolk Construction Company ("Suffolk"). The relationship with Suffolk was governed by a Subcontract Agreement ("Subcontract"). (Doc. #21-1.) Article 7 of the Subcontract required Defendants to execute and deliver performance and payment bonds worth $4.7 million to Suffolk. (Id. at 3, 6.)

Tier obtained a Subcontract Payment Bond ("Payment Bond") and Subcontract Performance Bond ("Performance Bond") (collectively, the "Bonds") from Merchants. (Doc. #21-3.) Additionally, a General Application and Agreement of Indemnity ("GIA") was executed where Defendants agreed to indemnify Merchants for liabilities, losses, and expenses caused by the execution or procurement of the Bonds. (Doc. #21-2, p. 3.)

The relationship with Suffolk soured. Defendants allege that they were not at fault, and that Merchants initially agreed with that determination. Merchants later reversed course, Defendants claim, forcing Tier to sign a Performance Bond Release and

Assignment ("Settlement") by threatening to stop supporting its operations. (Doc. #21-5.)

As part of the Settlement, Merchants paid Suffolk $1.8 million. (Id. at 3.) Merchants and Tier also agreed to forfeit $1.4 million owed by Suffolk. (Id. at 2–3.) Suffolk reduced the penal sum of the Performance Bond to $500,000 and agreed to release that Bond entirely upon Tier's completion of certain remaining construction items. (Id. at 3.) If Tier's completion of the remaining items was delayed, Suffolk could charge Tier $5,000 per day in Delay Damages.[1] (Id. at 4.) In addition, Suffolk assigned to Merchants all of its claims against Tier relating to the Performance Bond. (Id. at 5.) The Settlement did "not releas[e]" any obligations under the "Payment Bond." (Id. at 4.)

Also relevant, Merchants, Tier, and Mr. Hoffmann executed a Promissory Note and Security Arrangement (the "Note"). (Doc. #21-4.) The Note supplies "terms" that govern Tier's payment of "all amounts for which [it] is obligated to indemnify [Merchants] under [the GIA]." (Id. at 2.) Payments are to be made in "monthly installments" of "$25,000" by the "26th" of each month. (Id.) Merchants may accelerate payments under the Note when a default

---

[1] Suffolk later demanded $500,000 in liquidated delay damages based on Defendants' alleged failure to timely complete the remaining items, which Merchants paid in exchange for a full release, discharge and cancellation of the Performance Bond. That agreement was memorialized in a Supplemental Performance Bond Release and Assignment (the "Supplement").

remains uncured after two contractual notice periods. (Id.)

## II.

Merchants commenced this action for breach of contract, asserting that all four Defendants breached their duty of indemnification under the GIA. (Doc. #1, pp. 11–12.) Defendants filed their Answer (Doc. #21), and more recently, their First Amended Counterclaim ("FACC"). (Doc. #35.) In thirteen counts, the FACC seeks declaratory relief and damages for various contract and tort claims.

Merchants filed the pending Motion to Strike (Doc. #36) and Motion to Dismiss and Strike (Doc. #38), seeking the following relief: (a) the dismissal of Counterclaims II, V, VI, and VII as improper shotgun pleadings, or alternatively, a more definite statement under Rule 12(e); (b) the dismissal of Counterclaim VII with prejudice because Tier and Mr. Hoffmann lack standing to bring that claim; (c) the striking of Defendants' request for a jury trial for their answer, affirmative defenses, and counterclaims because Defendants waived their rights to a jury trial in the GIA and the Settlement.

### A. Shotgun Pleadings

#### i. Arguments

Merchants seeks to dismiss Counterclaims II, V, VI, and VII as impermissible "shotgun pleading[s]." (Doc. #38, p. 11.) Merchants asserts that Defendants "run afoul of the prohibition

against commingling separate and distinct causes of action." (Id.) The argument is as follows. Counterclaim II makes a single claim for declaratory relief involving "two separate contracts": the Note and the GIA. (Id.) Counterclaims V and VI seek declaratory relief for claims involving three separate contracts: the GIA, the Settlement, and the Note. (Id. at 11–12.) Counterclaim VII alleges a breach of contract claim involving "two separate and distinct contracts," the Performance Bond and the Payment Bond, "with different terms, conditions, rights, and obligations." (Id. at 12.) Additionally, not all Defendants are parties to each of those contracts. (Id.) Merchants concludes that it would be "[b]etter practice" to require those counterclaims to be repleaded "in separate and distinct causes of action," or alternatively, the Court should require a more definite statement under Rule 12(e). (Id.)

As to Counterclaims II, V, and VI, Defendants respond that there is no "shotgun pleading" involved "because the matters pled involve contracts that are interrelated." (Id. at 8.) As to Counterclaim VII, Defendants respond that "[t]here is no reason to distinguish" between the two Bonds in "separate counts because the point is the same" — Merchants "breached its duties under [both] bonds by treating Tier as being in default under the Subcontract [] when it was not." (Id. at 10.) Defendants also assert that the Settlement "ma[de] no distinction between whether the amounts

[were] being paid [from] one [Bond] or the other." (Id.) Rather, the amounts drawn from each were reduced to a "lump sum" under the Settlement. (Id.) (citation modified). As such, separating Counterclaim VII into two breach of contract claims is unnecessary. (Id.)

### ii. Analysis

The "unifying characteristic" of all four types or categories of shotgun complaints is that they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321–23 (11th Cir. 2015). The Court concludes that Counterclaims II, V, and VI do not fall within the prohibition against shotgun pleading. However, as discussed below, clarity would be promoted by the repleading of Counterclaim VII.

The Court begins with Merchants' challenges to Counterclaims II,[2] V,[3] and VI[4], all of which seek declaratory judgments.

---

[2] In Count II, Defendants seek a declaration that because the Note "governs any repayment obligations [under the GIA]," "no action can be maintained for recovery under the GIA as long as no default has occurred under the [] Note." (Doc. #47, p. 43.)

[3] In Count V, Defendants seek a declaration that because "Tier was never in material default of its obligations to Suffolk under the Subcontract," even if Suffolk assigned its rights under the Subcontract to Merchants, that assignment was of no value, so the "$1,834,418 Merchants paid to Suffolk under the Settlement [] cannot be recovered from" Tier, Mr. Hoffmann, or Mrs. Hoffmann "under any [] contract or legal theory that may be asserted by Merchants." (Id. at 47–48.)

[4] In Count VI, Defendants seek a declaration that because "Tier

- 6 -

"Multiplicity does not always equate with clarity." Weiland, 792 F.3d at 1325 n.18. Repleading a single count as separate counts may not necessarily "promote clarity" when those counts are "all based on the same [alleged] transaction or occurrence." Id. at 1325. "[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim . . . materially increase[s] the burden of understanding the factual allegations underlying each count." Id. "[W]hatever their faults," Counterclaims II, V, and VI are informative and clear enough for the Court "to readily determine if they state a claim upon which relief can be granted." Id.

All Defendants seek these declarations, but some Defendants are not parties to certain contracts. That may be "dispositive in a Rule 12(b)(6) analysis, but it is not dispositive to the separate question of whether the[se] claims . . . are so poorly pleaded that they warrant dismissal under Rules 8(a)(2) and 10(b)." Id. at 1325. While some Defendants may or may not ultimately prevail on their declaratory judgment claims, these are not shotgun pleadings.

The Court turns next to Merchants' challenge to Counterclaim

---

was never in material default of its obligations to Suffolk under the Subcontract," and since any construction delays were "caused by" "Suffolk," "other contractors," or "[impossibility of] performance," any "balance due on the [] Note or under the GIA does not include the $500,000 [Merchants] paid to Suffolk in delay damages." (Id. at 49–50.)

VII.[5]  Defendants assert that the Settlement "ma[de] no distinction between whether the amounts [were] being paid [from] one [Bond] or the other."  (Doc. #47, p. 10.)  That is incorrect.

The Settlement states that "Surety will pay Obligee in exchange for [] Obligee releasing and discharging the Performance Bond."  (Doc. #21-5, p. 2.)  It specifies that the Parties "release each other for any and all obligations" with the "exception" of "obligations under the Payment Bond."  (Id.). Defendants' own allegations in the FACC are that the Settlement released "all liability or claims" "[o]ther than" those under the "Payment Bond."  (Doc. #35, ¶ 100, p. 38.)

Defendants' claims of contractual bad faith on the Performance Bond and Payment Bond thus appear to be founded on "separate" facts.  The claim involving the Performance Bond seems to be based on the surrounding circumstances of the Settlement, while the factual basis of the other claim is presently unclear. Requiring these claims to be repleaded would "promote clarity."

---

[5] Counterclaim VII involves a claim of breach of contract, where it is alleged that "[u]nder the terms of the Performance [and] Payment Bond[s], Merchants' obligations to Suffolk were conditioned upon Tier being in material default under the Subcontract." (Id. at 50.) Merchants' "determination of whether such default existed was subject to the implied duty of good faith and fair dealing." (Id.) Merchants breached that duty "by treating Tier as being in default under the Subcontract [] when it was not," causing $3.1 million in damages. Merchants caused Tier to forego an additional $1.4 million it was owed by Suffolk by threatening to "no longer provide financial support if Tier failed to execute the Settlement." (Id.)

<u>Weiland</u>, 792 F.3d at 1325 (quoting Fed. R. Civ. P. 10(b)).

Therefore, Merchants' motion to dismiss Counterclaims II, V, and VI as impermissible shotgun pleadings is **DENIED**, but the motion to dismiss Counterclaim VII is **GRANTED**.

## B. Standing

Merchants seeks to dismiss Counterclaim VII ("Breach of Contract — Performance Bond and Payment Bond") because Mr. Hoffmann and Tier purportedly lack standing.  (Doc. #38, p. 8.)

In making that argument, Merchants relies in significant part on two different right-of-action ("ROA") provisions in the Performance and Payment Bonds.

The ROA provision in the Payment Bond states:

**RIGHT OF ACTION:** No right of action shall be commenced on this bond by any Claimant:[6]

**2.2.1** Unless Claimant . . . shall have given written notice to any two of the following: Principal, Obligee, or the Surety above named, within ninety (90) days after such Claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made . . .

**2.2.2** After the expiration of one (1) year from the date (1) on which the Claimant gave the notice required by Subparagraph 2.2.1, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone on the Project,

---

[6] The Payment Bond defines "Claimant" as "an Individual or entity having a direct contract with the Principal to furnish labor, materials or equipment for use in the performance of the Subcontract or any individual or entity having valid liens which may be asserted in the jurisdiction where the Project is located." (Doc. #35-3, pp. 3-4.)

whichever first occurs. . . .

> **2.2.3** Other than in a state court of competent
> jurisdiction in and for the county or other political
> subdivision of the state in which the Project, or any
> part thereof, is situated, or in the United States
> District Court for the district in which the Project, or
> any part thereof, is situated, and not elsewhere.

(Doc. #35-3, p. 3.)

The ROA provision in the Performance Bond, contrarily, states:

> **RIGHT OF ACTION.** No right of action shall accrue on this
> bond to or for the use of any person or entity other
> than the Obligee named herein, its heirs, executors,
> administrators or successors.

(Id. at 6.)

***Governing Law.***[7] "Where the terms of a contract are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document." Crawford v. Barker, 64 So. 3d 1246, 1255 (Fla. 2011). In those circumstances, the contract must be "interpreted and enforced in accordance with its plain meaning." Aldridge v. Jayyous Props., LLC, No. 1D2024-1176, 2025 WL 2055229, at *2 (Fla. 1st DCA July 23, 2025). Under Florida law, "a contract that is not mutually enforceable" or "that provides no remedy by way of enforcement of a valid judgment" may be deemed "illusory."

---

[7] The parties cite dueling cases but give little attention to the fundamental step of interpreting the language of these contracts. The Court engages in independent jurisdictional review of the standing issue, and at this time, concludes that Merchants' argument fails.

Fla. Dep't of Env't Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1270 (Fla. 2008) (citing Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So.2d 4, 5 (Fla. 1984)). See also Great Am. Ins. Co. v. Sch. Bd. of Broward Cnty., Fla., No. 09-61636-CIV, 2010 WL 4366865, at *14 (S.D. Fla. July 30, 2010), adopted, No. 09-61636-CIV, 2010 WL 11505944 (S.D. Fla. Sept. 27, 2010).

There are material differences between these ROA provisions. The Payment Bond's ROA provision clearly only places limitations on a *Claimant's* pursuit of a cause of action. Those limitations do not apply to any other person or entity. As Merchants itself asserts, "Tier Electric and Mr. Hoffmann do not fall within the definition of a 'Claimant' under the Payment Bond." (Doc. #38, p. 9.) Thus, from its plain language, Aldridge, 2025 WL 2055229, at *2, the Payment Bond's ROA provision does not affect Mr. Hoffmann or Tier's ability to pursue a breach of contract claim on the Payment Bond.

The Performance Bond's ROA provision restricts "any person or entity" other than the "Obligee" (or its heirs, executors, administrators, and successors) from pursuing a cause of action "on" the Performance Bond. But the parties also executed a Multiple Obligee Rider ("MOR"), which modified the parties' rights under both Bonds. And notably, the MOR contains no ROA provision. One of the additional MOR "conditions" is that:

The Surety shall not be liable under this bond to the

> Obligee, or any additional Obligee, unless [Obligees]
> shall make payments to [P]rincipal in accordance with
> the terms of said contract as to payments and shall
> perform all other conditions to be performed under said
> contract at the time and in the manner therein set forth.

(Doc. #35-3, p. 7.)  Counterclaim VII seems to expressly reference the MOR; Defendants allege that "Merchants' obligations to Suffolk were *conditioned* upon Tier being in material default under the Subcontract." (Doc. #35, ¶151) (emphasis added).  And again, no MOR provision appears to prevent Defendants from suing Merchants to enforce the conditions agreed to in the MOR.  <u>See</u> <u>Fla. Dep't of Env't Prot.</u>, 986 So. 2d at 1270.

Moreover, the MOR expressly provides that the "bond and contract are made part hereof by reference." (Doc. #35-3, p. 7.) Reading the Performance Bond's ROA provision as Merchants suggests could thus lead to an "absurd" result, where "all counts of the Complaint could be construed to be actions 'on the Bond.'" <u>Great Am. Ins. Co.</u>, 2010 WL 4366865, at *16.  The more likely reading is that the Performance Bond's ROA provision forbids a person or entity other than the Obligee from demanding Merchants' "[specific] perform[ance]" under the Performance Bond in the event of Defendants' default.  <u>Id.</u>.  <u>See also</u> <u>Philip Morris, Inc. v. French</u>, 897 So.2d 480, 489 (Fla. 3d DCA 2004) ("even an unambiguous contract cannot be interpreted to achieve absurd results").  Defendants do not seek Merchants' specific performance, but to vindicate a claim of breach of the implied covenant of good faith

and fair dealing.

In short, the Court is unpersuaded that Defendants lack standing to pursue Counterclaim VII. While jurisdictional questions remain throughout the life of a case, at this stage of the proceedings, Merchants' motion to dismiss Counterclaim VII on standing grounds is **DENIED**.

### C. Jury Trial Demands

Merchants' also seeks to strike the jury-trial demands in Defendants' answer, affirmative defenses, and counterclaim. (Docs. ##36, 38.) Two jury-trial waiver provisions are involved. The first appears in Paragraph 10 of the GIA:

> [T]he Undersigned[8] hereby waive trial by jury in any action or proceeding pertaining to this Agreement. This waiver is knowingly, willingly and voluntarily made . . . and the Undersigned represent and warrant that no representations of fact or opinion have been made . . . to induce this waiver of trial by jury or to in any way modify or nullify its effect.

(Doc. #1-3, p. 4.) The second waiver provision appears in Section 20 of the Settlement, titled "Waiver of Jury Trial":

> The parties[9] hereby knowingly, irrevocably, voluntarily and intentionally waive any right either may have to a trial by jury in any action, lawsuit, proceeding, claim, or counterclaim arising out of, relating to, or connected with, this agreement.

---

[8] "Undersigned" in the GIA's jury-trial waiver refers to Tier, Mr. Hoffmann, Mrs. Hoffmann, and HTE.

[9] "Parties" in the Settlement's jury-trial waiver refers to Suffolk, Tier, and Merchants.

(Doc. #35-5, p. 7) (emphasis removed).

"A party may validly waive its Seventh Amendment right to a jury trial so long as waiver is knowing and voluntary." Bakrac, Inc. v. Villager Franchise Sys. Inc., 164 Fed. App'x 820, 823 (11th Cir. 2006); Ford v. Citizens & S. Nat'l Bank, Cartersville, 928 F.2d 1118, 1121 (11th Cir. 1991) ("Even though the substantive dimension of a claim brought in federal court may be governed by state law, the right to a jury trial in federal courts is to be determined as a matter of federal law"). To make that determination, a district court must consider (1) the "conspicuousness" of the waiver provision; (2) the parties' "relative bargaining power"; (3) the "sophistication" of the party challenging the waiver; and (4) whether the terms of the contract were "negotiable." Bakrac, 164 F. App'x at 823-24.

In deciding whether a claim "falls within the scope of a clause," a court must "look to the language of the clause." Bahamas Sales Assoc., LLC v. Byers, 701 F.3d 1335, 1340 (11th Cir. 2012). A claim may "relate[] to" a contract when the dispute is a "fairly direct result" of "the performance of contractual duties." Id. at 1340-41 (quoting Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir.2001)). Depending on a contract's language and surrounding circumstances, the terms "in connection with" or "pertaining to" in a jury-trial waiver may be deemed "unequivocal" and "broad in scope." Jaffe v. Bank of

<u>Am., N.A.</u>, 395 F. App'x 583, 586 (11th Cir. 2010).

Defendants "do not contest that the waivers of jury trial in the GIA and Settlement [] are enforceable," <u>i.e.</u>, that the waivers were entered into knowingly and voluntarily.[10] (Doc. #47, p. 11); (Doc. #48, p. 2.)  Defendants agree that those waivers apply to almost all of the counts in the FACC.  (Doc. #47, pp. 11–14.) Defendants argue, however, that two Defendants are entitled to jury trials on certain counterclaims:  both Mr. Hoffman and Tier on Counterclaims I, III, and IV and Mr. Hoffmann alone on Counterclaim IX.  (<u>Id.</u> at 14.)  Additionally, Defendants contend that Affirmative Defenses 3, 5, and 12 "relate to" those counterclaims and are also excluded from the jury-trial waivers for these two Defendants.  (Doc. #48, p. 2.)[11]

The Court will **GRANT** Merchants' motion to strike Defendants' jury-trial demand without further discussion, **<u>except</u>** as to Counterclaims I, III, IV, and IX and Affirmative Defenses 3, 5, and 12, where the jury-trial demands are also struck, but further discussion is merited.

_____

[10] In addition to Defendants' concession that the jury-trial waivers are enforceable, the Court is persuaded by Merchants' argument to the same effect.  (Docs. #36, pp. 4–7; #38, pp. 13–16.)

[11] Defendants appear to assert that this list is not exhaustive, <u>i.e.</u>, "not limited to" Affirmative Defenses 3, 5, and 12 (<u>id.</u>), but do not identify any other potentially excluded affirmative defenses.  The Court deems the motion to be limited to the items specifically identified.

The Court begins with Mr. Hoffmann's alleged entitlement to a jury trial on Counterclaim IX.  Defendants acknowledge that Mr. Hoffmann and Tier "are parties to the GIA."  (Doc. #47, p. 11.)  And later, in asserting that Tier is <u>not</u> entitled to a jury trial for Counterclaim IX, Defendants concede that Counterclaim IX "relates to" the GIA "because that [C]ount alleges that the principal balance" under the Note "has been inflated by including amounts not due under the GIA."  (<u>Id.</u> at 13.)  But if that is true for Tier, it must be true for Mr. Hoffmann.  Mr. Hoffman is not entitled to a jury trial.  The Court **GRANTS** Merchants' motion to strike Defendants' jury-trial demand as to Counterclaim IX.

Mr. Hoffmann and Tier assert that they are entitled to a jury trial on Counterclaims I, III, and IV, which involve claims of declaratory judgment, breach of contract, and fraud in the inducement on the Note.  Their arguments are again unavailing.  Defendants focus entirely on asserting that those counterclaims do not fall within the scope of the Settlement's jury-trial waiver.[12]  As Merchants notes, however, even if those counterclaims were "not subject to the Settlement['s] waiver," Defendants have overlooked

---

[12] Defendants assert that Mr. Hoffmann, "unlike Tier," is "not [a] part[y] to the Settlement."  (Doc. #47, p. 10.)  Next, they assert that Tier's waiver of its jury trial right in the Settlement does not apply to Counterclaims I, III, and IV, as those claims "all relate to the [] Note," and the Settlement was "executed" after the Note, and the latter "does not arise out of, is not related to, and is not connected with" the former.  (<u>Id.</u> at 13.)

the possibility that they are "subject to the GIA's [waiver]." (Doc. #53, p. 5.)

In the FACC, Defendants allege that Merchants believed "that the GIA doesn't touch on repayment terms" and so the Note was used "to address those points." (Doc. #35, ¶ 68, p. 23.) Defendants allege further that based on that representation, they *also* understood that the Note "[provided] the terms for the repayment of amounts due from Tier to Merchants under the GIA." (Id. at ¶ 124.) From its plain language, the Note supplies the "terms" of payment for "all amounts" for which Tier "is obligated to indemnify [Merchants] . . . under th[e] [GIA]." (Doc. #21-4, p. 2.)

In similar circumstances, the Eleventh Circuit has deemed a subsequent agreement to "connect with" and "pertain to" a prior agreement for purposes of enforcing a jury-trial waiver. Jaffe, 395 F. App'x at 585-86 (citation modified) (enforcing contractual jury-trial waiver for claims involving a "letter of credit" where separate agreements supplied terms "pledging collateral to secure their obligation . . . in the event of a draw on the letter of credit" and the jury-trial waivers were set forth in those other agreements).[13] It bears repeating:  Defendants "do not contest

---

[13] See also Allyn v. W. United Life Assur. Co., 347 F. Supp. 2d 1246, 1255 (M.D. Fla. 2004) ("Allegations of fraud going to the contract generally are insufficient to invalidate a jury waiver provision." (quoting Fleet National Bank v. Dittman, 1992 U.S. Dist. LEXIS 17292 (S.D. Ala. 1992) (citing Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835, 837-839 (10th Cir.1988) cert.

the enforceability of the waiver of jury trial" for matters that "'pertain[] to' the GIA."  (Doc. #48, p. 2); <u>see also</u> <u>Jaffe</u>, 395 F. App'x at 586 (determining that the use of the term "pertaining to" in a jury-trial waiver is "unequivocal" and "broad in scope").

Therefore, the Court **GRANTS** Merchants' motion to strike Defendants' jury-trial demand as to Counterclaims I, III, and IV. And as the Court has now determined that Defendants are not entitled to a jury trial on any counterclaims, the Court **GRANTS** Merchants' motion to strike Defendants' jury-trial demand as to Affirmative Defenses 3, 5, and 12.

Accordingly, it is hereby

**ORDERED:**

1. Merchants' Motion to Strike Jury Trial Demand (Doc. #36) in Defendants' Answer, Affirmative Defenses, and Counterclaim (Doc. #21) is **GRANTED.**

2. Merchants' Motion to Dismiss Counterclaims II, V, VI, and VII, and Motion to Strike Jury Trial Demand (Doc. #38) in Defendants' First Amended Counterclaim (Doc. #35) is **GRANTED IN PART** and **DENIED IN PART**:

   a. The motion to strike Defendants' jury trial demand is

---

denied 490 U.S. 1021 (1989)))); <u>Kaplan v. Regions Bank</u>, No. 8:17-CV-2701-T-36CPT, 2019 WL 4668175, at *6 (M.D. Fla. Sept. 25, 2019) (holding that malicious prosecution claim was subject to a jury-waiver clause, which applied to alleged torts "arising out of or relating in any way" to a Deposit Agreement).

**GRANTED.**

    b. The motion to dismiss Counterclaims II, V, and VI under Rule 10(b) is **DENIED.**

    c. The motion to dismiss Counterclaim VII on standing grounds is **DENIED.**

    d. The motion to dismiss Counterclaim VII under Rule 10(b) is **GRANTED.**

    e. Counterclaim VII is **DISMISSED WITHOUT PREJUDICE.**

3. Defendants may file a second amended counterclaim within **twenty-one (21) days** of this Opinion and Order.

    **DONE and ORDERED** at Fort Myers, Florida, this __1st__ day of August 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record